[No. 24290. *En Banc.* March 15, 1933.]

M. D. CHANDLER, *as Receiver, Appellant,* v. H. P. MILLER, *Respondent.*[1]

[1]Reported in 19 P. (2d) 1108.

*E. H. Belden* and *H. M. Berkey,* for appellant.
*Brown & Weller,* for respondent.

BLAKE, J.—This case was here before on appeal by plaintiff from a judgment dismissing the action after a demurrer to the complaint had been sustained. That judgment was reversed, and the cause remanded with directions to overrule the demurrer. *Chandler v. Miller,* 168 Wash. 563, 13 P. (2d) 22. The defendant thereupon filed an answer in which he admitted all facts essential to plaintiff's recovery, but interposed a cross-complaint and affirmative defense. To this, plaintiff demurred. The demurrer was overruled, and thereupon both parties moved for judgment on the pleadings. From a judgment dismissing the action on defendant's motion, plaintiff again appeals.

The facts upon which appellant's case depends are set forth circumstantially in *Chandler v. Miller, supra,* and will not be repeated further than is necessary to the discussion of respondent's cross-complaint and affirmative defense.

The action was brought by appellant, as receiver of Diamond Motor Parts Company, a Minnesota corpora-

254

tion, to recover from respondent, a stockholder, six hundred dollars on account of his superadded liability, as such, imposed by article X, § 3, of the constitution of that state. The respondent, in his cross-complaint and affirmative defense, alleges that, early in 1926, the Diamond Motor Parts Company made application to the state of Washington for a permit to sell one million shares of stock. With the application, there was submitted a proposed stock subscription contract and a sample of stock certificate which the company proposed to use and issue. Upon the face of both the contract and proposed certificate, were the words: "Fully paid and non-assessable." Pursuant to the application, the company was, on or about March 6, 1926, granted a permit to sell stock in this state. Respondent entered into a contract to purchase stock, and thereafter, in conformity to such contract, a certificate of shares was issued to him, bearing on its face the words: "Fully paid, non-assessable."

He also alleges that, prior to his entering into the subscription agreement, the corporation, its officers and agents, represented that the shares were non-assessable; that his purchase of the stock involved no other or further liability than the par value thereof, which he paid. He further alleges that he did not know of the superadded liability provided for by the constitution and laws of Minnesota; and that, had he known of it, he would not have bought the stock. He also alleges that fraud was practiced on the state of Washington by the company in procuring the permit to sell stock. This charge is based upon the fact that the application for the permit did not mention the superadded liability provided for by the constitution of Minnesota.

Respondent prays that the contract for the purchase of stock be rescinded, but he does not ask for the return of his money. He characterizes his plead-

ing as a cross-complaint, conceiving, evidently, that, as a cross-complaint for rescission, his obligation would be measured by a different rule than as an affirmative defense. It is, in fact and law, an affirmative defense. Pomeroy's Code Remedies (5th ed.), §§ 563, 609.

If, by asking for his money, he had, in fact and law, made of it a cross-complaint, his cause would have been defeated by the very cases he relies upon to defeat appellant's action. A prayer for such relief would too obviously call for a depletion of the trust fund of an insolvent corporation to come within the rule even of *Goodin v. Palace Store Co.,* 164 Wash. 625, 4 P. (2d) 493, and much less within the rule of *Johns v. Coffee,* 74 Wash. 189, 133 Pac. 4, and *Atwood v. McKenzie-Waterhouse Co.,* 120 Wash. 214, 206 Pac. 978, 41 A. L. R. 650.

In *Chandler v. Miller, supra,* it was held that the order levying the assessment made by the United States district court in Minnesota is conclusive upon all stockholders, both within and without that state, as to the amount, the propriety and necessity therefor. But the stockholder is not precluded thereby

" . . . from showing that he is not a stockholder, or is not the holder of as many shares as is alleged, or has a claim against the corporation which in law or in equity he is entitled to set off against the assessment, or has any other defense personal to himself." *Selig v. Hamilton,* 234 U. S. 652, Ann. Cas. 1917A, 104.

See, also, *Converse v. Hamilton,* 224 U. S. 243, Ann. Cas. 1913D, 1292; *Bernheimer v. Converse,* 206 U. S. 516; *Straw & Ellsworth Mfg. Co. v. Kilbourne Co.,* 80 Minn. 125, 83 N. W. 36; *London & Northwest Co. v. St. Paul Co.,* 84 Minn. 144, 86 N. W. 872.

It is respondent's contention that the alleged fraud set up in his answer constitutes a "defense personal to himself," which may be interposed to defeat the

assessment levied against him. We shall pass the question of the sufficiency of the facts alleged to constitute fraud, and assume that, as against the corporation as a going concern, they would be sufficient to warrant a rescission.

This leaves the question: Is fraud such a defense as may be interposed in an action brought by the receiver of an insolvent corporation to recover an assessment levied against a stockholder for a superadded liability imposed by law? Many cases have been cited by respondent which, he contends, answer the question in the affirmative. These cases, however, all involve the original contract of subscription. The great weight of authority in such cases holds to the rule that, even after insolvency, a stockholder may interpose the defense of fraud, except as to creditors whose claims accrued subsequent to his becoming a stockholder. This court is committed to that rule. *Atwood v. Mc-Kenzie-Waterhouse Co.,* 120 Wash. 214, 206 Pac. 978, 41 A. L. R. 650. But, when the action is to recover from a stockholder on account of superadded liability imposed by law, there is equally abundant authority to the effect that the defense of fraud is unavailable. We are also committed to this rule. *Duke v. Johnson,* 123 Wash. 43, 211 Pac. 710.

We think the rules of these cases are not only not inconsistent, but that there is sound basis of distinction between them. The theory of the rule in the *Atwood* case is that prior creditors could not and did not rely upon the unpaid subscription of the stockholder. They could not know that there might be a balance due from the stockholder to the corporation on that account and, therefore, could not have extended credit on the strength of it. But the double liability of the stockholder imposed by the constitution is something that the creditor may and does know about. It

is to be presumed that he extends credit on the strength of it. It is at all times a potential asset of the corporation and, upon insolvency, it becomes a real one. It cannot be escaped by contract. *Thomas v. Matthiessen,* 232 U. S. 221, *Pinney v. Nelson,* 183 U. S. 144. Nor can it be vitiated by fraud. Speaking of the character of superadded liability imposed by U. S. Rev. Stat., § 5151, on stockholders of banks, the supreme court, in *Scott v. Deweese,* 181 U. S. 202, said:

"If the subscriber became a shareholder in consequence of frauds practised upon him by others, whether they be officers of the bank or officers of the Government, he must look to them for such redress as the law authorizes, and is estopped, as against creditors, to deny that he is a shareholder, within the meaning of section 5151, if at the time the rights of creditors accrued he occupied and was accorded the rights appertaining to that position."

Following the rule of *Duke v. Johnson, supra,* we conclude that fraud is unavailable to respondent as a defense in this action.

The judgment is reversed.

MAIN, MITCHELL, MILLARD, and STEINERT, JJ., concur.

BEALS, C. J. (dissenting)—In the case of *Scott v. Deweese,* 181 U. S. 202, cited by the majority in support of the proposition that, in such an action as this, the defense of fraud is not available to a subscriber to bank stock as against a claim for the superadded liability appurtenant to the ownership of such stock, it is clear that knowledge of the law imposing such liability was necessarily imputed to the subscriber. He acquired the stock within the jurisdiction of the legislative authority which enacted the law, and consequently the law became a part of the transaction and

258

a part of which it was properly held that knowledge on his part was necessarily presumed.

The same is true concerning the facts of the case of *Duke v. Johnson*, 123 Wash. 43, 211 Pac. 710, also relied upon by the majority. In that case, this court held that a person acquiring stock in a Washington bank could not, in an action by a creditor or his representative, defend against the superadded liability imposed by the law of this state on the ground that his purchase of the stock had been induced by fraud. The defendant in the case cited was necessarily held to have acquired his bank stock in view of the statutes of this state imposing certain burdens upon such ownership. A person is presumed to know the law of the jurisdiction in which he lives. Such law is not a fact which one may or may not know or understand; such knowledge and understanding must be presumed.

In the case at bar, a different situation is presented. If any presumption prevails concerning the laws of Minnesota, it is that those laws are similar to the laws of this state. The law of a foreign jurisdiction, as is the state of Minnesota, is a matter of fact which a citizen of Washington may or may not know. He is not presumed to know it and, in my opinion, it does not become, as matter of law, any part of a Washington contract, such as is here presented. It does not appear from the record before us that respondent had actual knowledge of the superadded liability imposed by the laws of Minnesota, and I see no reason for holding that such knowledge must be imputed to him.

Under these circumstances, it seems to me clear that the superior court properly ruled in respondent's favor, and did not err in dismissing the action. I therefore dissent from the conclusion reached by the majority.

TOLMAN, PARKER, and HOLCOMB, JJ., dissent.